WENDELL F. BROWN AND SIRONIA D. BROWN, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Brown v. Commissioner
Docket No. 18577-83.
United States Tax Court
T.C. Memo 1987-110; 1987 Tax Ct. Memo LEXIS 106; 53 T.C.M. (CCH) 246; T.C.M. (RIA) 87110; February 24, 1987. Fergus B. Norton, for the petitioners. Scott Anderson, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Income Tax
Additions to Tax
Year
Deficiencies
Section 6653(b) [1]
1978
$3,480.70 $1,740.35 1979
7,669.90
3,834.95
1980
7,956.90
3,978.45
The issues for decision are: (1) whether petitioners failed to report taxable income for the years 1978, 1979 and 1980 in the amounts determined by respondent; and (2) whether petitioners *107 are liable for the additions to tax for fraud under section 6653(b) for years 1978, 1979 and 1980. FINDINGS OF FACT Some of the facts have been stipulated. The stipulations of fact and exhibits attached thereto are incorporated herein by this reference. Petitioners are husband and wife whose legal residence at the time of filing the petition herein was Vinton, Virginia. Petitioners timely filed joint Federal income tax returns with the Internal Revenue Service Center, Memphis, Tennessee for the calendar years 1978, 1979 and 1980. During a portion of the year 1978, petitioners owned and operated a restaurant known as the Skyline Restaurant in Roanoke, Virginia. During the years 1978, 1979 and 1980, petitioners owned and operated a restaurant known as the Stoplight Restaurant in Roanoke, Virginia. In 1980, petitioner Wendell F. Brown (hereinafter sometimes referred to as "Wendell"), was also engaged in the business of selling real estate. Petitioner, Sironia D. Brown (hereinafter sometimes referred to as "Sironia"), is the only child of Heinrich A. Diegmann (hereinafter referred to as "Heinrich") and Freida Katchen Diegmann (hereinafter referred to as "Freida"). Heinrich *108 was a citizen of West Germany and is now deceased. [2] Freida is also a citizen of West Germany. Heinrich, then a retired West German civil servant, and Freida lived with petitioners for approximately six months during each of the three years in question. When not living with petitioners, Heinrich and Freida lived in West Germany. Sometime prior to the first year at issue in this case, Heinrich and Freida established a joint checking account at the Bank of Virginia, Branch Office in Vinton, Virginia. Heinrich transferred $1,498.84 [3] in 1978, $3,272.81 in 1979 and $2,681.67 [4] in 1980, a total of $7,453.32, from his accounts in West Germany to his account in Virginia. The record does not indicate how Heinrich used the funds transferred into his Virginia account. *109 During the taxable years in issue, petitioners maintained two checking accounts and one savings account at the Bank of Virginia's branch in Vinton, Virginia. Said checking and savings accounts are hereinafter collectively referred to as "petitioners' bank accounts." Heinrich transferred funds either as gifts or loans to petitioners, [5] from his bank accounts in West Germany to petitioners' bank accounts. Respondent concedes petitioners received gifts from Heinrich in 1978 totaling $1,303.21, in 1979 totaling $910, and in 1980 totaling $1,100. Respondent also concedes petitioners received a cash gift of $207.10 in taxable year 1980 from Lola Brown, Wendell's mother. Conceded cash gifts received by petitioners during taxable years 1978, 1979 and 1980 total in the aggregate $3,520.31. Of this amount, $3,313.21 was received from Heinrich. [6]
*110 Petitioners failed to maintain adequate books and records of the income they received during the years in issue. [7] Using the bank deposits and cash expenditures method, respondent determined petitioners failed to report $13,214.01 of taxable income in taxable year 1978, $25,854.84 in 1979, and $31,276.82 in 1980. Wendell was convicted in 1981 for his involvement [8] with a gambling operation conducted in that year. No evidence was presented that Wendell or Sironia engaged in any illegal activity during the years in issue in this case. OPINION Unreported Income
Respondent *111 determined petitioners failed to report all of their taxable income during taxable years 1978, 1979 and 1980 using the bank deposits and cash expenditures method. The use of bank deposits in computing income has long been sanctioned by the courts. , affg. , cert. denied . Bank deposits are prima facie evidence of the receipt of income. , cert. denied ; . Respondent determined that petitioners' unexplained deposits and cash expenditures were taxable income. Petitioners therefore have the burden of showing that respondent's determination is not correct. , affd. . Petitioners do not dispute that they received additional money in the amounts determined by respondent. Rather, they claim any unreported income received during the years in question was derived through a series of gifts *112 from Heinrich, and thus constitutes nontaxable income. Sironia testified that Heinrich inherited between $60,000 and $100,000 from an undisclosed source, that as a retired civil servant he received three separate pensions and that Freida received an additional pension. From these sources, petitioners argue Heinrich had sufficient funds to make large annual cash gifts to petitioners. Sironia testified that when Heinrich and Freida visited petitioners, they brought with them $20,000 to $30,000 in cash. She testified Heinrich kept the cash in a metal box in petitioners' residence and that Heinrich or Freida gave petitioners money from the box when they needed it. Petitioners further testified that Heinrich provided approximately $20,000 on two separate occasions which petitioners used to purchase the Skyline and Stoplight Restaurants. Petitioners argue, "It is most credible that the Diegmanns (Heinrich and Freida) could afford to and did donate approximately $20,000 a year to their daughter Sironia and her family from the evidence submitted and the uncontradicted testimony." Petitioners misunderstand their burden of proof. Merely showing a "credible" source of nontaxable income, *113 without some documentary evidence, is not sufficient. We need not accept self-serving testimony to sustain a burden of proof without substantiating documentation. , affg. a Memorandum Opinion of this Court. Respondent's determination that the bank deposits and cash expenditures represent taxable income is presumed to be correct. In order to overcome the presumption of correctness which accompanies respondent's determination, petitioners must substantiate that the unreported income was in fact derived from nontaxable sources. Respondent determined petitioners' unreported income [9] by adding all the deposits in petitioners' bank accounts during each year to cash payments he determined petitioners made in repayment of specific bank loans, and then allowing credits against those totals for a few redeposits, certain small gifts or loans he recognized as being received from Sironia's parents, taxable income reported on petitioners' returns, and certain amounts determined to be from non-taxable sources. No detailed analysis of withdrawals from the bank accounts or the disposition thereof was presented to determine whether *114 any of the withdrawals were redeposited or applied to payment of the bank loans. [10] Respondent concedes that petitioners received certain cash gifts from Heinrich and others for which credit was not allowed in the notice of deficiency, but these are in relatively small amounts. However, petitioners offered no evidence, other than that agreed upon in the stipulation of facts, of any specified transfers of funds from Heinrich to petitioners' bank accounts for which they have not received credit. Rather petitioners testified that from time to time since they were married in 1962, and particularly when visiting them in America, Heinrich gave petitioners large sums of money totaling $20,000 to $30,000 per year because he did not need it and they did. [11] However, we find it is implausible to believe that no records or acknowledgements of the receipt of such large sums were made. *115 We cannot accept petitioners' self-serving testimony with respect to additional gifts without corroborative evidence. While we are not entirely satisfied with respondent's determinations of unreported taxable income, we do not find them to be arbitrary or unreasonable, and petitioners have failed to overcome the presumption of correctness of those determinations. Allowing for the concessions made by respondent, we uphold respondent's determinations of unreported taxable income. Section 6653(b) Fraud
For purposes of section 6653(b), fraud is an intentional wrongdoing with a specific intent to evade a tax believed to be owed. , cert. denied ; , affd. . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. ; , affd. in an unpublished opinion . *116 The burden of proof is on respondent to prove fraud by clear and convincing evidence. Section 7454(a); Rule 142(b). Fraud is not to be imputed or presumed. ; . Because direct proof of fraudulent intent is seldom available, respondent may show requisite intent from the conduct of the taxpayer and the surrounding circumstances. ; . However, courts should not sustain findings of fraud upon circumstances which at most create only a suspicion. . Respondent recites the following factors which he argues establish petitioners' fraudulent intent: 1) petitioners' substantial understatement of income in successive years, 2) concealment of the sources of unreported income, 3) failure to maintain adequate books and records of income received, 4) "the fact that the unreported income was received from illegal activity" and 5) that petitioners' explanation of unreported *117 income was "a web of lies" and as such demonstrated that petitioners' willingness to "lie at a trial in an attempt to escape (their) tax liability." We agree with respondent that petitioners substantially understated their income in taxable years 1978, 1979 and 1980 and, from lack of evidence to the contrary, that petitioners failed to adequately maintain books and records of the income they received. However, there is no evidence to suggest that petitioners concealed the sources of the unreported income. To the contrary, respondent readily reconstructed petitioners' income by analysis of petitioners' bank accounts. In fact there is no evidence that petitioners had any source of income other than those discussed herein. Petitioners did not use false names, false social security numbers or any other deceptive devise, in an attempt to conceal their income. We believe respondent was too harsh in characterizing petitioners' testimony at trial as "a web of lies." Respondent conceded that Heinrich made numerous, albeit small, cash gifts to petitioners throughout the years in question. It is reasonable to assume that Heinrich may have made additional gifts to petitioners and this *118 was petitioners' testimony before this Court. We find for respondent on the issue of unreported income, not because petitioners' testimony was entirely lacking in credibility, but because they failed to satisfy their burden of proving by solid corroborative evidence that the cash bank deposits and payments on bank loans came from any non-taxable source except that conceded by respondent. Respondent has presented no evidence of any illegal activity during taxable years 1978, 1979 and 1980 which would lead us to conclude that petitioners' unreported income was derived from illegal activity. Respondent may not rely on Wendell's conviction for his involvement with a gambling operation in 1981 to infer that petitioners fraudulently intended to evade tax in 1978, 1979 or 1980. Respondent has failed to establish that petitioners engaged in any illegal activity during taxable years 1978, 1979 and 1980 or that there existed a nexus between any illegal activity and petitioners' unreported income. We find that respondent has not proved fraud by clear and convincing evidence. The decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Heinrich passed away on an unspecified date in 1983.↩
3. The stipulated exhibit listing Heinrich's 1978 transfers showed three separate transfers of $477.21, $482.34 and $539.29 then incorrectly listed the total of the three transfers as $959.55. The correct total, which we use herein, is $1,498.84. ↩
4. The stipulated exhibit listing Heinrich's 1980 transfers showed four separate transfers of $678.23, $673.60, $669.27 and $660.57 then incorrectly listed the total of the four transfers as $2,686.67. The correct total, which we use herein, is $2,681.67.↩
5. The parties stipulate that funds received by petitioners from Heinrich constituted either gifts or loans to petitioners. Funds transferred most probably were gifts, not loans. However, the exact nature of these transfers is immaterial to the outcome of this case. For convenience, the funds shall hereafter be referred to as "gifts." ↩
6. In his notice of deficiency, respondent reduced petitioners' unreported taxable income to the extent of a $300 gift in taxable year 1978 from Heinrich, a $250 gift in taxable year 1979 from Heinrich, and a $200 and $400 gift, both from Heinrich, both in taxable year 1980. Respondent conceded the balance of the gifts in stipulations of fact which are a part of the record in this case.↩
7. In his answer respondent alleged that petitioners "failed to maintain, or to submit for examination by the respondent, complete and adequate books and accounts of their income producing activities" for the years here involved. Respondent did not allege that petitioners failed to maintain adequate records of income generated by the two restaurants. Petitioners did not file a reply but no books or accounts were offered in evidence.↩
8. Wendell was convicted of "assisting" a bookmaker who was convicted for gambling. Petitioner did not object to this evidence with respect to the conviction.↩
9. This is based on allegations in respondent's answer. The explanation of adjustments normally attached to the first page of the notice of deficiency was not filed. ↩
10. We note, for example, that there was a withdrawal of $4,100 from a checking account in March 1980 and a deposit of $6,000 in savings account eight days later. ↩
11. It would be reasonable to believe that parents who visited their only child five or six months each year would give the daughter and her family some of the spare cash they had on hand and did not need, but these are large amounts and no evidence was offered to corroborate this testimony.↩