SAM Y. KIM AND CHONG KIM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kim v. Commissioner
Docket No. 29345-88
United States Tax Court
T.C. Memo 1991-500; 1991 Tax Ct. Memo LEXIS 549; 62 T.C.M. (CCH) 923; T.C.M. (RIA) 91500; October 2, 1991, Filed *549 Decision will be entered under Rule 155. John J. O'Brien, for the petitioners. Christine Colley, for the respondent. KORNER, Judge. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION By statutory notice of deficiency dated August 23, 1988, respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Deficiency in
Income and Self-
Additions to Tax
Year
Employment Tax
[1] Sec. 6653(b)(1) Sec. 6653(b)(2)
Sec. 6661
1983
$ 67,878
$ 33,939
*
$ 16,970
1984
$ 220,942
$ 110,471
*
$ 55,236
Respondent, pursuant to an amendment to answer, asserted an increase in the deficiency for 1983 to $ 142,543. Following concessions by the parties, the remaining issues are: (1) *550 Whether petitioners had unreported capital gains for 1983 in the amount of $ 15,876.74; (2) whether petitioners received unreported taxable income in the amount of $ 226,388 and $ 271,367 for 1983 and 1984, respectively; (3) whether petitioners are liable for additions to tax under section 6653(b)(1) and (2) for both years; (4) whether petitioners are liable for additions to tax under 6661(a) for both years; and (5) whether petitioners are liable for self-employment taxes on unreported income for 1983 and 1984. FINDINGS OF FACT Some of the facts have been stipulated and are so found; the stipulation and the accompanying exhibits are incorporated herein by this reference. Sam Y. Kim (Kim) [2] and Chong Kim, husband and wife, were residents of Southborough, Massachusetts, at the time their petition was filed. During the years at issue, petitioners were cash basis taxpayers, and filed joint returns. Petitioner, during 1983 and 1984, was manager of Oriental Antiques, *551 Inc., in Boston, Massachusetts. Petitioner, during the years at issue, also bought and sold real property. In 1982, petitioner acquired land and improvements located at 73 Marlborough Street, Boston, Massachusetts (Marlborough property), for $ 300,000. Petitioner converted the Marlborough property into five condominium units, and sold four units in 1983, and the remaining unit in 1984. Specifically, the units were sold on the following dates: unit 1 on July 12, 1983; unit 2-3 on November 4, 1984; [3] unit 4 on September 15, 1983; unit 5 on September 15, 1983; and unit 6 on July 6, 1983. Petitioners did not report the sale of any of the units on their 1983 or 1984 tax returns. Petitioner kept a ledger in which were reflected the costs associated with the improvement of the Marlborough property as well as other expenses. Respondent and petitioners agree that the total cost of improving and "condominiumizing" the Marlborough property was $ 395,128.26, *552 as detailed in the ledger. [4]
Petitioners sold two other properties in 1983. One, which shall be referred to as the Chestnut property, sold for $ 150,000. Petitioners reported $ 150,000 as gain on their 1983 return, neither reducing the gain by the property's selling cost nor claiming any basis. Respondent in his notice of deficiency accepted petitioner's determination of gain on this property. On brief, respondent conceded that petitioners are entitled to deduct $ 1,054 in selling costs associated with the disposition of the Chestnut property. The second property, which shall be referred to as the Beacon property, sold for $ 550,000. Petitioner owned a one-half interest therein, and petitioners on their 1983 return reported a $ 62,255 gain from this sale. Respondent determined that petitioners' gain on the sale of the Beacon property was $ 63,832. Petitioners conceded *553 the correctness of respondent's determination, except for his failure to include an additional expense that petitioners claim they are entitled to and had not taken in computing this property's gain on their 1983 return. In 1983, the following amounts were deposited into petitioner's bank accounts: [5]
Account
Amount
Shawmut #200-157-8
$ 406,705
Shawmut #200-109-8
15,891
Shawmut #059-949-2
289,645
Total
$ 712,241
In 1984, petitioner deposited the following amounts into his bank accounts. Accountmount
Shawmut #200-157-8
$ 549,785
Shawmut #200-109-8
19,791
Neworld #44-0008506
288,500
Neworld #27-014594-9
299,179
Shawmut #244-886-6
38,600
Farmington #901-002-0
91,209
Total
$ 1,287,064
For 1983, respondent in his statutory notice of deficiency determined that petitioners had understated their income by $ 108,653, comprising $ 77,058 in *554 unreported ordinary income, $ 20,589 in unreported capital gains, and $ 11,156 in miscellaneous items. [6] Respondent also increased petitioners' deductions by $ 150, since respondent determined that pursuant to his recomputation petitioners would receive more favorable tax treatment in the aforementioned amount by itemizing deductions rather than taking the standard deduction. For 1984, respondent in the same notice of deficiency determined that petitioners had understated ordinary income by $ 477,453, comprising $ 476,892 in unreported income, $ 3,408 in disallowed depreciation, and $ 153 in disallowed itemized deductions. Respondent offset this amount with an allowable $ 3,000 capital loss. [7] Thereafter, respondent conceded a reduction in unreported income to $ 271,367. *555 Petitioners timely filed a petition with this Court on November 14, 1988, regarding the years at issue. Respondent, following completion of the trial, amended his answer pursuant to Rule 41 to conform the pleadings to the evidence, and increased the amount of unreported income for 1983 to $ 226,388, but also reduced the amount of unreported capital gains to $ 15,877. The reduction (respondent's concession) in unreported capital gains arose because respondent altered his allocation of basis with respect to the Marlborough condominiums. The following chart reflects respondent's revised determination of gain. Net Selling
Capital Gain
Unit
Cost to Selling Date
Price
(Loss)
1
$ 80,568.81
$ 90,971.00
$ 10,402.19
2-3
257,151.11
182,529.00
(74,622.11)
4
39,066.03
40,040.00
973.97
5
113,291.48
111,721.00
(1,570.48)
6
205,050.82
230,994.00
25,943.18
$ 695,128.25
$ 656,255.00
($ 38,873.25)
On brief, respondent conceded that petitioners are entitled to reduce gain on the sale of unit 1 by $ 25.00 and to increase loss on the sale of unit 5 by $ 308.15. Respondent, for 1983 and 1984, determined additions to tax under section 6661 and section 6653(b)(1) *556 and (2). Respondent further determined that petitioners were liable for self-employment tax for 1983 and 1984, based upon each year's net income. OPINION Unreported Capital Gains for 1983
A. Marlborough Property I. Background The first issue for determination concerns the amount of capital gains petitioners are required to report for 1983. This reduces, primarily, to a consideration of the proper tax treatment of the costs attributable to the Marlborough property petitioner "condominiumized." Petitioners did not report the sale of any of the Marlborough condominiums. Respondent, based upon the ledger provided by petitioner at the examination level, allocated the costs of the project to each unit. The ledger, as maintained by petitioners, generally, did not designate a particular entry as attributable to a particular unit. Respondent's original allocation method involved taking the total amount spent on development up to a date preceding the sale of the first unit, and then apportioning that amount to the five units based upon the percentage interest attributable to each unit as found in the Master Deed for the property on file with the Suffolk County Registry of *557 Deeds. Expenses paid from that date to a date preceding the sale of the next unit were allocated to the remaining four units. Respondent used this method to allocate all of the costs attributable to the "condominiumization." This method resulted in petitioners' recognizing a capital gain in 1983 and a capital loss in 1984. II. Burden of Proof Prior to resolving the issue as to the proper allocation of basis to the Marlborough condominiums, the question as to which party has the burden of proof on this issue must be addressed. Respondent's witness, Revenue Agent Paul White (White), testified that, subsequent to the issuance of the notice of deficiency, he had modified the allocation of basis after conferring with petitioner's counsel. The revised allocation method differs from the original calculation in that expenses paid up to the day of sale, as opposed to a date prior to sale, are attributable to all the units that remained unsold up until that time. This revision resulted in respondent's decreasing his determination of unreported capital gain for 1983. On direct examination, White stated that this method was more reasonable than the method on which the notice of deficiency *558 was based. On cross-examination, White testified that in making his allocation he did not inquire whether the ledger entries were based upon the accrual or cash basis method of accounting, nor did he take into account entries that specifically referred to the particular units. In addition, the revised allocation fails to reflect some selling costs which respondent later conceded were attributable to certain units. Based upon these concessions, petitioners argue that we should find respondent's determination arbitrary, and that the burden of proof shifts to respondent. Where respondent's determination is arbitrary, the burden of going forward with evidence shifts to respondent. Helvering v. Taylor, 293 U.S. 507, 79 L. Ed. 623, 55 S. Ct. 287 (1935); Shriver v. Commissioner, 85 T.C. 1, 3 (1985). The determination of whether the notice of deficiency was arbitrarily issued focuses on "whether respondent's actions were reasonable under all the existing facts." Chaum v. Commissioner, 69 T.C. 156, 162 (1977). We find neither that these concessions constitute an admission by respondent that his determination was arbitrary and excessive, Truesdell v. Commissioner, 89 T.C. 1280 (1987), *559 nor that respondent's modification of his determination rises to the level of a new matter. Achiro v. Commissioner, 77 T.C. 881 (1981). The concessions reduce the amount of capital gain at issue, thereby relieving petitioner of the burden of proving that respondent's determination was, to that extent, erroneous. See Gobins v. Commissioner, 18 T.C. 1159, 1168-1169 (1952), affd. 217 F.2d 952 (9th Cir. 1954). Under these circumstances respondent's determination as to this item, after concessions, retains its presumption of correctness, and the burden of going forward with the evidence, as well as the ultimate burden of persuasion, remains with petitioner. III. Accounting Method The next matter that we must address is which accounting method was used by petitioner with respect to his Marlborough property. In general, a taxpayer may use a different method of accounting for each trade or business in which he is involved, provided that the particular method clearly reflects income. Sec. 1.446-1(d)(1), Income Tax Regs. Although the ledger for the Marlborough property was maintained according to the cash receipts and disbursements *560 method of accounting, petitioners apparently assert that they applied the accrual method of accounting with respect to that property, and that, since the costs of improvements were incurred prior to payment, respondent's use of the cash basis method is erroneous. Petitioners have the burden of proving that respondent's determination as to their accounting method for the Marlborough property is erroneous. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioner testified that the ledger entries reflected payments, but that the work was done prior to payment. Petitioners provided no additional evidence to substantiate their claim that the "condominiumization" of the Marlborough property was based upon the accrual method of accounting. Accord, Kotmair v. Commissioner, 86 T.C. 1253 (1986); Magnon v. Commissioner, 73 T.C. 980 (1980). Petitioners have failed to persuade us that respondent's determination that petitioners used the cash basis method of accounting with respect to development of the Marlborough property was erroneous. See Rule 142(a). Furthermore, respondent properly applied the cash basis method of *561 accounting in allocating the items of expense found in the ledger. IV. Allocation Method A cash basis taxpayer is required to include in gross income any item of gross income received in that year. Sec. 451(a). Gross income includes gains derived from dealings in property. Sec. 61(a)(3). Gain from the sale of property is the excess of the amount realized over its adjusted basis. Sec. 1001(a). Where a taxpayer sells part of a larger property, the cost of the larger property must be equitably apportioned with respect to the part sold. The sale of each part is treated as a separate transaction, and gain or loss is determined at the time such part is sold. Sec. 1.61-6(a), Income Tax Regs. However, if the basis cannot be apportioned, because such apportionment is either impossible or impracticable, no gain must be reported; instead the basis of the entire property is reduced by the proceeds from the sale. Fasken v. Commissioner, 71 T.C. 650, 656-657 (1979). Petitioners assert that respondent's revised allocation of basis is erroneous. The correct allocation, they assert, would involve an allocation ratio derived by dividing the sales price of the particular *562 condominium by the total sales price of all the units. In addition, so petitioners contend, the proper method would not involve an allocation of cost until sale of the final unit. The Federal income tax is computed on the basis of an annual accounting. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 75 L. Ed. 383, 51 S. Ct. 150 (1931). The law is clear that events occurring after the year in which the property was sold cannot alter the amount realized in the year of the transaction. Estate of Levy v. Commissioner, 17 T.C. 728, 731 (1951). To allow any other accounting with respect to reporting a capital transaction, would, in effect, keep the transaction open indefinitely. In these circumstances, where the sale precedes the payment of an expense, the cash basis taxpayer would be entitled to deduct the expense in the year in which it is paid. Arrowsmith v. Commissioner, 344 U.S. 6, 97 L. Ed. 6, 73 S. Ct. 71 (1952); Harchester Realty Corp. v. Commissioner, T.C. Memo 1961-184. Petitioners have failed to show that respondent's method of apportionment was erroneous. Petitioners' records did not, in general, allocate the cost of improvements to the individual *563 units. Petitioners maintain that the costs of development should be allocated after all of the units have been sold. However, this is not a circumstance where the allocation of cost was impracticable or impossible. In addition, we note that petitioners' method of allocation does not clearly reflect income, since petitioners would have us allocate costs incurred in 1984 to a sale occurring in 1983. We find that the general method of allocation used by respondent (as corrected) was reasonable. As to costs specifically attributed to a particular unit in the ledger, we find that petitioners have not shown that it was erroneous for respondent not to have allocated those costs to the designated unit. In so holding, we note that petitioners could have avoided this outcome, if they had properly maintained their records, and allocated the "condominiumization" costs to a particular unit as those costs were accrued or paid. Petitioners assert that they are entitled to reduce gain from the sale of the Marlborough units by $ 50,000. This amount was paid by petitioners to obtain a release of a claimant's rights to title on unit 2-3. Respondent stipulated that petitioners did pay the amount *564 of the settlement, but respondent did not apply it to offset gain on any of these units. As a cash basis taxpayer, petitioner would be entitled to increase basis or take a capital loss in the year of payment. Harchester Realty Corp. v. Commissioner, supra.However, the record is silent as to when this settlement was paid. Petitioners have failed to show that it was erroneous for respondent not to have included the settlement in determining the loss from the disposition of unit 2-3 in 1984. Additionally, we do not agree with petitioners that the settlement, if allowed to alter basis, should have been allocated to every unit instead of only to unit 2-3. B. Chestnut Property Petitioners argue that they overstated gain from the sale of the Chestnut property by $ 1,954.60. Petitioners bear the burden of proof on this issue. Rule 142(a). Respondent, on brief, conceded that $ 1,054.60 of that amount was attributable to selling costs of the property. Based on the record, petitioners did not establish that they are entitled to an additional deduction of $ 900 on the sale of the property. C. Beacon Property Petitioners claim that, with respect to the Beacon *565 property, petitioner paid a finders fee of $ 18,000, attributable one-half to petitioner and one-half to his associate, John Hayes (Hayes), and that they failed to deduct this expense in determining gain from the sale of the Beacon property on their 1983 return. Petitioner testified that he had paid the fee. Hayes testified that he did not know whether the fee was paid, but that he relied on petitioner's word that the fee was a valid expense. Petitioner introduced a document, drafted by Hayes, at trial that concerned the division of the net proceeds from the Beacon property sale between Hayes and petitioner. Although this document reflected a credit to petitioner of $ 9,000, it does not state the reason for the credit. Significantly, respondent did not increase petitioner's share of the proceeds by any $ 9,000 in addition to petitioner's 50-percent share. Based upon the record, we are not persuaded that petitioner did pay a finders fee of $ 18,000. Thus, petitioner is not entitled to reduce his gain on the sale of the Beacon property by his share of the alleged expense. Unreported Income -- Both Years
The next issue for decision is whether petitioners failed to report *566 $ 226,388 and $ 271,367 as ordinary income on their 1983 and 1984 returns, respectively, after taking into account the resolution of the capital gain questions heretofore discussed. Where bank records show "considerable transfers of cash of which * * * [the taxpayer] submitted no further records," the taxpayer did not keep a complete set of accounts and the Commissioner is justified to use another method to compute income. Sec. 446(b); Jacobs v. United States, 131 Ct. Cl. 1, 126 F. Supp. 154, 157 (1954). This Court has long sanctioned the bank deposits method of income reconstruction. Nicholas v. Commissioner, 70 T.C. 1057 (1978); Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Gobins v. Commissioner, 18 T.C. 1159 (1952), affd. 217 F.2d 952 (9th Cir. 1954). Even when the books and records of the taxpayer appear both complete and internally consistent, respondent may use the bank deposits method of reconstructing income to determine whether the taxpayer's books accurately reflect his or her financial history. Snyder v. Commissioner, T.C. Memo 1969-173. *567 The taxpayer has the burden of proving that unexplained deposits do not represent income. Reaves v. Commissioner, 31 T.C. 690 (1958), affd. 295 F.2d 336 (5th Cir. 1961); Walter v. Commissioner, T.C. Memo 1980-31; Rule 142(a). See also Armes v. Commissioner, 448 F.2d 972 (5th Cir. 1971), revg. on other issues a Memorandum Opinion of this Court. "A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income." Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). But, bank deposits are not conclusive of income. Estate of Mason v. Commissioner, supra.
Petitioners do not contend that respondent's use of the bank deposits method to determine taxable income for the years in issue was improper. Instead, petitioners assert that the deposits can be accounted for as being derived from nontaxable sources of income. Petitioners argue that gifts, loans, repayments of debt, redeposits of amounts they had withdrawn, and the like account for the contested income. In this regard, section 102(a) provides that gross income does not *568 include the value of property acquired by gift. Additionally, receipt of a loan does not constitute gross income. Gatlin v. Commissioner, 34 B.T.A. 50 (1936). With respect to establishing a nontaxable source, this Court is not required to accept petitioners' uncontroverted testimony. Tokarski v. Commissioner, supra. Failure by petitioners to present corroborative evidence within their control weighs against them. Tokarski v. Commissioner, supra;Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Brown v. Commissioner, T.C. Memo 1987-110. Where respondent determines a deficiency based upon the bank deposits method of reconstructing income, that determination is entitled to the presumption of correctness, and petitioners bear the burden of proving such determination is incorrect. Estate of Mason v. Commissioner, supra at 656-657; Rule 142(a). However, where respondent raises a new matter not contained in the notice of deficiency, the burden of proof as to that issue is on respondent. Rule 142(a). *569 This is so where the new issue involves either an increase in the deficiency, or requires the presentation of different evidence. Achiro v. Commissioner, supra.
A. Unreported Income for 1983 I. Respondent's Burden of Proof For 1983, respondent determined, based on bank deposits, that petitioners had unreported income of $ 77,058. On this, petitioners had the burden of proof. In an amendment to answer, respondent alleged that certain deposits (for which respondent had given petitioner credit in the unexplained deposits computation) had been overstated, and he increased the amount of unreported income from unexplained deposits by $ 149,330. Respondent bears the burden of proof as to this increase in unreported income. Respondent may meet his burden through evidence which shows either a likely taxable source for the deposits or that negates all nontaxable sources. Cf. Holland v. United States, 348 U.S. 121, 99 L. Ed. 150, 75 S. Ct. 127 (1954). Respondent claims that $ 3,000 held in escrow on the sale of the Chestnut property had not been deposited into petitioners' bank accounts. Compelling evidence, in the form of a letter from the attorney handling the closing *570 of this sale, was introduced which showed that the funds held in escrow were not released until February 1984. Thus, respondent has met his burden of proof in showing that the $ 3,000 held in escrow could not have been deposited into petitioner's bank accounts in 1983. Respondent further asserts that the downpayment in the amount of $ 75,000 on the sale of the Chestnut property could not have been deposited into petitioners' bank accounts. Respondent does not contend that the downpayment was not made, but instead asserts that the funds could not have been deposited into petitioner's accounts in the period of time from January 1, 1983, to the date the transaction was closed. Respondent is mistaken when he relies primarily upon discrediting petitioner's testimony, regarding the disposition of the Chestnut property downpayment, to establish the contention that the downpayment was not deposited into any of petitioner's accounts. The record reveals that in 1983 over $ 700,000 was deposited into petitioner's accounts, and that prior to the close of the transaction over $ 80,000 in deposits, the sources of which are not agreed upon, was made into petitioner's various bank accounts. *571 In such circumstances, we are unable to hold that respondent has met his burden of proof with respect to this item of the increased deficiency. Although petitioners agreed to respondent's basis for increasing the amount of unexplained deposits by $ 71,330, such agreement does not rise to the level of a concession that such deposits are taxable income. They merely agreed that respondent had erred in determining that certain transactions had resulted in nontaxable deposits. In the instant case, respondent affirmatively negated only one nontaxable source of deposits claimed by petitioners, but not any of the others. Under these circumstances, we cannot hold that respondent has met his burden with respect to the increase in deficiency for 1983, nor any portion thereof. II. Petitioners' burden of proof Petitioners bear the burden of proving $ 77,058 in deposits, as set forth in the notice of deficiency, were derived from nontaxable sources. Rule 142(a). Petitioners contend that $ 65,000 of the unreported income can be accounted for by petitioner's inheritance from his father's estate. Petitioner testified that his brother, Chun Young Kim, brought and sent money to him during *572 1983 as part of petitioner's inheritance. However, petitioner's testimony was vague and nonspecific, and at critical points conflicted with and contradicted testimony given by his brother, who was also vague and general. In addition, petitioner failed to introduce documentary evidence attesting to the inheritance and the alleged deposits. We are not persuaded that petitioner received and deposited $ 65,000 from his father's estate, if in fact he had inherited anything, into any of petitioner's bank accounts in 1983. Petitioners next assert that $ 30,000 of the deposits were derived from the proceeds of a loan from Shawmut Bank. Petitioners presented no documentary evidence reflecting the existence of the loan. Instead petitioners rely on petitioner's testimony that he had indeed obtained such a loan and deposited the funds therefrom into one of his bank accounts. Petitioners support that assertion by noting that petitioners made substantial interest payments in 1983. Since petitioners failed to offer sufficient corroborative evidence, such as loan agreements and deposit slips, we cannot find that petitioners received a $ 30,000 loan from Shawmut Bank in 1983. Petitioners next *573 argue that petitioner wrote a check for $ 10,000 on Shawmut account 059-949-2 and accidently deposited that check into the same account. Petitioners maintain that they intended to deposit the check, which is in evidence, into another account. The check is made out to "Cash" and is not endorsed, yet its backside contains bank markings. Petitioners argue that an endorsement or bank approval is required when a check of this kind is cashed. Thus, they ask us to conclude that the check must have been deposited. This claim is corroborated by the bank statement for the Shawmut account 059-949-2, which indicates that on the date of the check there was both a check paid in the amount of $ 10,000 and a deposit of $ 10,000. Although the transaction in itself is unusual to say the least, nonetheless, based upon the corroborating evidence, and the manner in which the check was negotiated, we hold that petitioners did deposit the $ 10,000 check into the same account upon which it was drawn. Petitioners assert that petitioner's wife wrote petitioner a $ 10,000 check which petitioner subsequently deposited into petitioner's Shawmut account 059-949-2. Not only was the check introduced into *574 evidence, but Chong Kim's testimony regarding the check, the source of the funds, and her intention to give the amount to her husband, was persuasive. Respondent asserted that the check could not have been deposited since it lacked an endorsement. However, given the bank markings on the back of the check and the bank statement attesting to a deposit of $ 10,000 on the date of the check, we find that the check was indeed deposited into petitioner's bank account. Thus, we find this check was given as a gift and explains $ 10,000 of the unreported income for 1983. Petitioners contend that $ 10,000 of the unreported income for 1983 is explained by a loan extended from Hayes to petitioner prior to the acquisition of the Beacon Street property. Petitioners established that the loan existed, but, as respondent argues, they failed to present any evidence establishing the additional requirement that the funds had been deposited into one of petitioner's bank accounts. Thus, we are unpersuaded that the $ 10,000 loan was deposited into petitioner's bank accounts for 1983. Respondent asserts that petitioner deposited $ 10,000 in Shawmut account 059-949-2 sometime between November 30, 1983, *575 and December 31, 1983. Petitioners claim that the amount could not have been deposited to said account because petitioner no longer used the account following August 1983. Since this deposit was included in the notice of deficiency, the burden of proof is on petitioners to show that the amount was not deposited into the account. Rule 142(a). Petitioners established that the balance in the account as of August 8, 1983, was zero, and based upon this fact they would have us conclude that the account had been effectively closed by the time of the contested deposit. However, petitioners could have obtained evidence from Shawmut Bank confirming that the account had been closed by the time of the disputed deposit. This petitioners did not do, and as a consequence they have failed to bear their burden with respect to this item. Petitioners did not claim any other nontaxable sources of income to explain the deposits. We find that petitioners have met their burden as to $ 20,000 in unexplained bank deposits. They failed to persuade us that the additional $ 57,058 of unexplained deposits was derived from nontaxable sources. B. Unreported Income for 1984 For 1984, respondent determined *576 in his notice of deficiency that petitioners had unreported income of $ 476,892. Respondent later reduced (conceded) the amount in dispute to $ 271,367. With respect to this taxable year, the burden of proof is entirely upon petitioners to show that respondent's determination of unreported income is attributable to nontaxable sources. Rule 142(a). Petitioners maintain, as they did with respect to 1983, that a sizeable portion of the deposits, specifically $ 115,500, is attributable to petitioner's inheritance from his father's estate. However, as described supra, we found the testimony of petitioner and his brother unconvincing and inconsistent. The character of their testimony, the failure to prove the amount of petitioner's inheritance from his father, and the circumstance that petitioner failed to present documentary evidence to corroborate that these amounts were ever deposited, prevent us from concluding that petitioners did receive and deposit $ 115,500 from petitioner's brother as part of an inheritance. Petitioners next assert that they received, in effect, a $ 5,000 loan from Katy Chun in August 1984. Testimony by petitioner regarding the receipt of Katy's $ 5,000 *577 check was inconsistent. First petitioner characterized the check as a loan, although the check, itself, refers to it being given as a deposit on an apartment building. On cross-examination, petitioner testified that the check did represent a deposit for a building, and that the deal later fell through. Petitioner adduced evidence that he paid Chu S. Chun $ 5,057.53 by check dated September 12, 1984. Petitioner claims that the difference of $ 57.53 represented interest on the borrowed funds. Petitioners' contention cannot be sustained, since the purpose of Katy's check was not established by corroborative documents or testimony. Based upon the record, we are unpersuaded by petitioners' claim that this deposit was derived from a nontaxable source. Petitioners next assert that they received $ 1,817 from Yu Hsi Chiu (Chiu), petitioner's sister-in-law, as repayment for certain funds advanced by petitioner to pay Chiu's taxes and condo fees. Petitioner and Chiu testified as to the source of the funds, and petitioners introduced into evidence copies of Chui's checks along with their deposit slips. Despite the fact that petitioners did not present any evidence attesting to an actual *578 payment by petitioner of Chiu's obligations, we are persuaded that the deposits in question were repayments for funds that petitioner had advanced to Chiu, and hence constituted nontaxable sources of income. Petitioners assert that Chiu loaned petitioner $ 77,000 in 1984. Petitioner's testimony regarding the use to which he put the loan was contradicted in part by his testimony concerning other deposits. Petitioner's and Chiu's testimony was consistent to the extent that they stated that petitioner transferred a building located at 25 River Street to Chiu after 1984, in satisfaction of the alleged loan. However, given that petitioners failed to produce documentation linking the $ 77,000 payment to the subsequent transfer of property, we cannot find that the $ 77,000 check represented a loan. Petitioners also claim that petitioner's wife gave $ 35,000 to petitioner as a gift in 1984. Based upon both petitioners' testimony, and copies of both the check and deposit slip, we find that $ 35,000 of the contested deposits constituted a gift from petitioner's wife, and thus is not includable in income. Petitioners assert that Kang Hyun Lee (Lee) loaned petitioner $ 19,550 on May 9, *579 1984. The record contains a copy of the check from Lee and a deposit slip showing that the amount had been deposited. Petitioners assert that petitioner repaid Lee in two installments, one on August 5, 1984, in the amount of $ 15,690 and a second one on November 30, 1984, in the amount of $ 5,250. These checks are also in evidence. Petitioners claim that the difference between the amount Kim was paid and the amount of the loan was interest. Despite the fact that petitioners did not take any interest deductions in 1984, we are persuaded by the documentary evidence and by the testimony of Lee's wife that the transaction did involve a loan. On July 2, 1984, petitioner deposited a check for $ 17,500 from a Dr. Scrimshaw (Scrimshaw) into one of his bank accounts. Petitioners assert that this deposit represented a downpayment for a unit located at 144 Charles Street, which transaction closed in 1985. Petitioners failed to introduce petitioners' 1985 tax return or the closing statement for the transaction into evidence, either one of which would have lent credence to petitioners' contention. Nor was Scrimshaw called to testify regarding the check. As the record stands, petitioners *580 have failed to present sufficient evidence to support their version of the facts as to this alleged nontaxable source. Petitioners have established that $ 56,367 of the unexplained deposits, as determined by respondent, was attributable to nontaxable sources. Fraud
The next issue for decision is whether petitioners are liable for additions to tax for fraud pursuant to section 6653(b) for each of the years at issue. Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To establish fraud, respondent must show that petitioners intended to evade taxes which they knew or believed they owed. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3rd Cir. 1968), cert. denied 393 U.S. 1020, 21 L. Ed. 2d 565, 89 S. Ct. 627 (1969). For each of the taxable years at issue, respondent need only establish that a portion of an underpayment was due to fraud for the fraud addition of section 6653(b)(1) to apply to the entire underpayment. See Professional Services v. Commissioner, 79 T.C. 888, 930 (1982). The addition to tax pursuant to section 6653(b)(2) is limited to 50 percent of the payable interest on the portion *581 of the underpayment attributable to fraud. Sec. 6653(b)(2)(A). The addition to tax for fraud must be proven with respect to each spouse separately and cannot be imposed on both spouses simply by virtue of their having filed a joint return. Sec. 6653(b)(4). "The existence of fraud is a question of fact to be resolved upon consideration of the entire record." Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Since direct proof of a taxpayer's intent is generally unavailable, fraud may be proved by circumstantial evidence. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). The requisite intent may be shown by "conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes." Rowlee v. Commissioner, supra.
Respondent would have us conclude that petitioners were fraudulent for failure to report the unexplained deposits on their returns for 1983 and 1984. However, despite the fact that we have found that petitioners were unable to substantiate certain deposits as coming from nontaxable sources, we are unable to find that petitioners *582 were fraudulent in failing to report the unreported income. This case is unlike the cases, cited by respondent, where it had been established, either by concession or proof, that income came from taxable sources. Here, respondent failed to prove that the unreported income was linked in any way to taxable sources. Nor did respondent negate all the possible sources of nontaxable deposits. See Holland v. United States, supra.Respondent may not rely on the failure of petitioners to explain the source of the deposits, in the context of a simple deficiency, to satisfy his burden of establishing fraud by clear and convincing evidence. Drieborg v. Commissioner, 225 F.2d 216 (6th Cir. 1955), affg. in part a Memorandum Opinion of this Court; Jones v. Commissioner, 29 T.C. 601 (1957). Respondent also asserts that, since petitioners failed to report income from the sale of the Marlborough condominiums, the omission constituted fraud. We disagree. Petitioners are correct when they assert that the venture was a loser overall, and even respondent accepted petitioners' contention. Respondent, in this case, did not show that *583 any of the units were sold at a profit. Instead, given the fact that petitioner's ledger did not allocate costs to each unit, and the requirements of annual accounting, we merely held that the evidence adduced at trial did not disprove the allocation method adopted by respondent. Lastly, respondent contends that, because petitioners deducted certain nondeductible personal expenses, this act reflected fraud. Certainly, petitioners did not offer any explanation as to why they took these unallowable deductions, but the fact that they were disallowed is not enough to establish fraud. Drieborg v. Commissioner, supra at 218. We cannot conclude that petitioners committed fraud, where respondent failed to adduce evidence showing intentional wrongdoing, particularly where petitioners also overstated gain, as in the case of the Chestnut property. Based upon the record as a whole, respondent has failed to convince us that either petitioner had the requisite fraudulent intent with respect to any portion of the underpayment for either year at issue. Section 6661
Section 6661(a) imposes an addition to tax equal to 25 percent of the amount of any underpayment *584 attributable to a substantial understatement of income tax. An understatement of tax is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the tax return. Sec. 6661(b)(1)(A). Understatement for purposes of section 6661(a) means the excess of the amount of tax required to be shown on the return over the amount which is shown on the return. Sec. 6661(b)(2)(A). The amount of the understatement is reduced by the portion of the understatement attributable to an item for which the taxpayer is able to show that there is substantial authority for the tax position taken, or attributable to an item for which the taxpayer adequately disclosed the relevant facts affecting the item's tax treatment in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Petitioners bear the burden of proof with respect to this issue. Rule 142(a). For both of the years at issue, petitioners failed to present any authority for the tax positions they took with respect to the items on which we have sustained respondent's determination, or which petitioner conceded. Furthermore, petitioners failed to offer any evidence that they adequately *585 disclosed the items constituting the understatement on their returns. See Schirmer v. Commissioner, 89 T.C. 277 (1987). Thus, if the recomputation of the understatement for either 1983 or 1984, in light of our holdings in this case, satisfies the numerical test of section 6661(b)(1)(A), we sustain respondent's determination of this addition to tax to the extent of the recomputed amounts. Self-employment Tax
Respondent determined that petitioners are liable for self-employment taxes on the unexplained deposits. Section 1401 provides that an addition to tax shall be imposed on the self-employment income of every individual. Such income includes an individual's net earnings from self-employment in any trade or business. Sec. 1402(a). Petitioners must show that respondent's determination of this tax was erroneous. Rule 142(a). Petitioners failed to present any evidence rebutting respondent's determination of self-employment taxes. Thus, we sustain respondent's determination that petitioners are liable for self-employment taxes on the income as redetermined herein. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
*. 50% of the interest due on the portion of the underpayment attributable to fraud.↩
2. Petitioner in the singular refers to Sam Y. Kim.↩
3. This unit was, apparently, created by combining unit 2 and unit 3.↩
4. The figure quoted above does not include the interest paid that petitioners did deduct on their 1983 return, and that respondent allowed.↩
5. The accounts, into which the deposits were made in 1983 and 1984, are treated by the parties as having been controlled at that time by petitioner.↩
6. Included in the miscellaneous category were unreported interest income of $ 792, dividend income of $ 151, and disallowed rental expenses of $ 10,213. Petitioners stipulated to the aforementioned adjustments.↩
7. Since petitioners failed to present any evidence regarding respondent's disallowance of depreciation in the amount of $ 3,408 for 1984, and since petitioners had the burden of proof with respect to this item, respondent's determination is sustained.↩